1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLAUDIO DIAZ, | ) Case No.: 1:12-cv-00399 JLT - HC |
| Petitioner, | ) ORDER DENYING PETITION FOR WRIT OF |
| v. | ) HABEAS CORPUS (Doc. 1) |
| SATF-SP, Corcoran CA, | ) ORDER DIRECTING CLERK OF COURT TO |
| Respondent. | ) ENTER JUDGMENT AND CLOSE FILE |
| | ) ORDER DECLINING TO ISSUE CERTIFICATE |
| | ) OF APPEALABILITY |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The parties have previously filed their written consent to the jurisdiction of the Magistrate Judge for all purposes.  (Docs. 8, 9)

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation after having been tried in Kings County Superior Court in 2009.  (Doc. 1 at 1; Doc. 14 at 28)  A jury convicted Petitioner of one count of committing oral copulation/copulation with a child aged ten years or younger (Cal. Pen. Code § 288.7) and four counts of committing lewd and lascivious acts on a child under the age of 14 (Cal. Pen. Code § 288(a)).  Id. Petitioner was sentenced to a determinate term of 12 years and a term of 15 years-to-life and the terms were ordered to be served consecutively.  Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District (the "5th DCA"),

1    which affirmed Petitioner's conviction on December 15, 2010.  (Doc. 14 at 28-33)  The California

2    Supreme Court denied Petitioner's petition for review on March 23, 2011. (Doc. 1 at 2; Doc. 14 at 6)

3    Petitioner did not file any collateral actions in the state courts.  Id.

4          On March 16, 2012, Petitioner filed the instant petition which raises four grounds for relief.[1]

5    (Doc. 1) On August 6, 2012, Respondent filed an answer.  (Doc. 14).  Petitioner did not file a traverse.

6    Respondent does not argue that any of the grounds for relief stated in the petition have not been fully

7    exhausted.

8                                    **FACTUAL BACKGROUND**

9          The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[2]:

10   The victim's mother (sometimes hereafter mother) testified that in the summer of 2008
11   she was working in the fields. At first she did not have anyone to take care of her two
     small children, the victim and her sister. Someone recommended Morfin as a possible
12   babysitter. Morfin lived with her four children and Diaz. Some other men often stayed
     at the house.

13   Morfin took care of the victim and her sister for about three weeks. One night after
14   work when mother came to pick up the children, the victim was in a hurry to go home
     and kept rushing her mother. During the drive home, the victim told her mother that
15   Diaz had put his hand down her pants and had touched her butt. Mother asked the
     victim if anything else had occurred, and the victim denied any other touching.

16   Late that night, mother heard the victim get up to use the bathroom. Mother asked the
17   victim why she could not sleep, and the victim told her mother more details. The next
     day, mother reported the incident to the police.

18   The victim testified that her mother took her to Morfin's house so that Morfin could
     take care of her while mother worked. One day she was sitting on the couch watching
19   television when Diaz sat down next to her. First he touched her breasts over her clothes,
     and then he lifted her shirt and touched her skin. Diaz also touched and licked the
20   victim's private parts, apparently on different occasions. Diaz also penetrated the
     victim's vagina with his finger. On another occasion, Diaz grabbed the victim's hand
21   and placed it on his penis.

22   Shawn McRae was the detective who investigated the victim's allegations for the Kings
     County Sheriff's Office. His testimony was limited to two topics. The first topic was
23   statements made by the victim in two interviews conducted by either the police or an
     agent for the police. The second topic concerned the steps taken in the investigation in
24   an attempt to establish the investigation was deficient.

25

26   [1] Notably, Petitioner relies upon the petition for review filed in the California Supreme Court on his behalf to form the
     factual bases for his petition here.  Thus, his petition properly sets forth the factual bases upon which he contends habeas
27   relief is warranted but does not squarely address the proper standards this Court must apply.
     [2] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).
28   Thus, the Court adopts that court's factual recitations.

                                              2

Diaz's brother, Jose de Jesus Diaz Lopes, established that he was at Morfin's house when the alleged molestations occurred. During this time there were several adults present in the household. Lopes also testified that there were few areas in the house that would provide any privacy to anyone. The point of the examination was to establish that it was unlikely that Diaz had any opportunity to molest the victim without being seen by another person.

Yolanda Portillo Garcia, Morfin's friend, testified that during the time period in question she was not working and often was at Morfin's house visiting. She confirmed there were many adults present, and that the floor plan to the house did not provide privacy that would permit Diaz to molest the victim.

Layla Juarez testified that she had babysat the victim and the victim's sister in the past. When doing so, she observed behavior by the victim that Juarez deemed inappropriate. When confronted, the victim denied committing the behavior to both Juarez and her mother.

The first amended information charged Diaz with one count of engaging in oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b)) and four counts of committing lewd and lascivious acts upon a child under the age of 14 (§ 288, subd. (a)). The jury found Diaz guilty as charged. Diaz was sentenced to a determinate term of 12 years for the violations of section 288, subdivision (a) and a consecutive indeterminate term of 15 years to life for the violation of section 288.7, subdivision (b).

People v. Diaz, 2010 WL 5095477 at *1-2 (Cal. Ct. App. Dec. 15, 2010).

## DISCUSSION

### I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA so it is governed by its provisions.

## II.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

> 1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.    resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406.

The "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2) pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

Even still, the AEDPA requires that considerable deference be given to a state court's factual findings.  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of

4

1    historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943,

2    976-077 (2004).

3            To determine whether habeas relief is available under § 2254(d), the federal court looks to the

4    last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker,

5    501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we

6    independently review the record, we still defer to the state court's ultimate decisions."   Pirtle v.

7    Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

8            The prejudicial impact of any constitutional error is assessed by asking whether the error had "a

9    substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson,

10   507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht

11   standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

12   **III.    Review of Petitioner's Claims**

13           The instant petition itself alleges the following as grounds for relief: (1) error as it relates to the

14   decision of Petitioner's wife not to testify; (2) the failure of the prosecution to disclose that McRae had

15   suffered a misdemeanor conviction; (3) the refusal of the trial court to allow Officer McRae to be

16   impeached with evidence of a misdemeanor conviction; and (4) the refusal of the trial court to allow

17   Petitioner to present evidence of the victim's prior conduct.

18           **A.      Ground One - Refusal to testify by Petitioner's wife**

19           Petitioner argues the trial court's decision to allow Morfin to be cross-examined as to whether

20   she attempted to influence a witness was error and improperly influenced her to refuse to testify.

21   Along these same lines, he seems to argue also that the trial court's advisal to Morfin that any

22   incriminating statements she made would be used to prosecute her likewise improperly influenced her

23   against testifying.  The Court disagrees.

24                   **1.      The 5th DCA's Decision**

25   The 5th DCA rejecting Petitioner's claim as follows:

26           Prior to Morfin's testifying, trial counsel requested the trial court preclude any
             questioning about alleged actions that Morfin took that the prosecutor described as
27           witness intimidation. The prosecutor informed the trial court that Diaz originally had
             been accused of molesting a second child, E.G., who is the daughter of Morfin's sister.
28           E.G. had come from Mexico to live with Morfin and Diaz. Diaz allegedly molested

                                                        5

E.G. during the time she lived with Morfin and him. After E.G. told her mother she was being molested, E.G. returned to Mexico. The prosecutor originally had filed charges against Diaz related to the alleged molestation of E.G., but E.G. and her mother refused to return to California to permit E.G. to testify.

The prosecutor alleged that Morfin's sister had told the authorities that Morfin had contacted her and had asked her to have E.G. tell the authorities that nothing happened. The prosecutor argued she should be allowed to question Morfin about the alleged witness intimidation. The prosecutor eventually informed the trial court that she had not decided whether to charge Morfin with a crime, and she was not going to decide how to proceed until the charges against Diaz were resolved.

The prosecutor also alleged that Morfin had attempted to intimidate the victim's mother. According to the prosecutor, the victim's mother had been approached by Mrs. Maraquin. Maraquin told the victim's mother that her husband had been prosecuted for molesting a child, but the child had been confused. Maraquin told the victim's mother that the victim might be confused about what happened, so the victim's mother should tell the victim that she was confused. According to the prosecutor, Maraquin approached the victim's mother at Morfin's request. Again, the prosecutor argued she should be able to examine Morfin about this alleged incident of intimidation.

The trial court stated that it would permit the prosecutor to ask about alleged witness intimidation, but would not allow the prosecutor to intimate there was a second victim.

Because the trial court recognized the potential for Morfin to incriminate herself if she responded to questions about witness intimidation, it advised Morfin that her testimony might incriminate her in the crime of suppression of evidence and informed her of her right to remain silent. The trial court appointed counsel to represent Morfin. The trial was then concluded for the day to permit Morfin to consult with her attorney.

The following day Morfin stated she would not testify because "my children are first and my husband is later." Diaz argues the trial court abused its discretion in permitting the prosecutor to cross-examine Morfin on the alleged incident of witness intimidation. Diaz also argues that Morfin's decision to invoke her Fifth Amendment right against self-incrimination also deprived him of the right to present a defense. He insists that Morfin was a "critical" defense witness who refused to testify because of intimidation from both the trial court and the prosecutor.

There was no intimidation from the comments of the trial court. It is true that the trial court stated that if Morfin made incriminating statements while testifying, the statements "will be used to prosecute you." It would have been better, perhaps, if the trial court had stated that incriminating statements could subject her to prosecution. The trial court appointed counsel to advise Morfin, and the decision not to testify was made after this consultation. Counsel undoubtedly informed Morfin that any statement she made would not necessarily subject her to prosecution, but could do so.

Nor did the trial court err in permitting Morfin to be cross-examined about incidents of witness intimidation. Witness bias is relevant to the jury in determining whether the testimony is believable. If Morfin attempted to intimidate witnesses in the belief she could keep Diaz from prison, the jury was entitled to hear of these facts so it could properly evaluate her testimony.

We emphasized "facts" in the preceding sentence to point out what the trial court did not rule. Diaz points out that one witness of the alleged witness intimidation was in Mexico. The trial court did not rule that the prosecutor could introduce the hearsay statements of the witness. The trial court's ruling merely allowed the prosecutor to

1    inquire whether Morfin had attempted to intimidate that witness. If Morfin answered
2    no, the prosecutor would have no admissible evidence to contradict Morfin unless the
     witness in Mexico testified. Diaz seems to assume otherwise, but there is nothing in the
3    record to support such speculation.

4    The prosecutor's conduct is an entirely different matter. Her comments that she had not
5    yet decided if she would prosecute Morfin for witness intimidation and would make
     that decision after this case had been resolved certainly sound as if the prosecutor was
6    threatening to prosecute Morfin if she testified in this trial. This implied threat should
     not have been made. As stated in Daggett, "Vigorous advocacy is admirable, but when
7    it turns into a zeal to convict at all costs, it perverts rather than promotes justice.
     (Daggett, supra, 225 Cal.App.3d at p. 758.)

8    Diaz's arguments, however, must be rejected because there is no evidence in the record
9    that his defense was impaired in any manner. There is no indication in the record to
     what Morfin would have testified. There is nothing that would allow this court to
10   conclude she could provide testimony that would prove Diaz's innocence. The victim
     testified that Morfin never saw any of the acts of molestation. Morfin confirming this
11   fact would add nothing to the trial. Diaz was able to establish through other witnesses
     that there were several adults at the house most of the time, thereby implying that the
12   victim should not be believed because Diaz never had the opportunity to molest her.
     Diaz also established that the victim had lied repeatedly in the past through the
13   testimony of a previous babysitter. Considering Morfin's bias (because Diaz was her
     husband), any testimony that she could have provided on this topic would not have
     added to the defense case.

14   People v. Diaz, 2010 WL 5095477 at *5-7.

15                    **2.     Federal Standard**

16        The Sixth Amendment provides a criminal defendant with the right to offer testimony from

17   favorable witnesses and to compel such witnesses to testify if they refuse to do so voluntarily.  The

18   Compulsory Clause of the Sixth Amendment, when coupled with the Due Process Clause of the

19   Fourteenth Amendment, provides a guarantee to the criminal defendant that he will be permitted to

20   present a full defense.  Holmes v. S. Carolina, 547 U.S. 319, 324 (2006).  On the other hand, a

21   defendant has no Sixth Amendment or Due Process right to the testimony of a witness who chooses to

22   invoke her right against self-incrimination. United States v. Moussaoui, 382 F.3d 453, 467 (4th Cir.

23   2004); United States v. Turkish, 623 F.2d 769, 773–74 (2d Cir.1980).

24        Where there is a claim that the court or the prosecutor interfered with the witness' voluntary

25   choice whether to testify, only will a "substantial" interference with a witnesses' decision implicate

26   the defendant's rights.  United States v. Vavages, 151 F.3d 1185, 1189 (9th Cir. 1998).   If a judge's

27   advisal to a witness is threatening or coercive, the defendant is deprived of due process if the witness

28   is "effectively driven off the stand." Webb v. Texas, 409 U.S. 95, 98 (1972).  Where the prosecutor's

                                                  7

statements are at issue, "'the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is necessary, and appropriate, the inference that the prosecutor sought to coerce a witness into silence is strong.'" <u>Vavages</u>, at 1190.

Finally, the Sixth Amendment is offended only where there is a showing the testimony "would have been relevant and material, and that it was vital to the defense." <u>Washington v. Texas</u>, 388 U.S. 14, 16 (1967). Thus, it is insufficient that Petitioner merely complain that the actions by the trial court and the prosecutor deprived him of Morfin's testimony. "He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense." <u>United States v. Valenzuela-Bernal</u>, 458 U.S. 858, 867 (1982).

### a.    The Court's action related to Morfin

As noted above, seemingly aware that Morfin could make statements that could incriminate her, the defense attorney sought to preclude the prosecutor from asking questions related to Morfin's alleged attempts to intimidate witnesses from testifying against Petitioner. The trial court determined that inquiries into her bias—as evidenced by her willingness to dissuade witnesses from testifying— were fair game.[3]

As a result, the trial court instructed Morfin as to her right not to testify as to incriminating statements and informed her of the consequences if she decided to testify. The Court agrees with the 5th DCA that the trial court's language choice was not perfect. However, there is no evidence the trial court imposed any sort of threat when advising Morfin and the Court has not been directed to any language the trial judge used that was coercive in any fashion. The language was not gratuitous nor did it use unnecessarily strong language as was condemned in <u>Webb</u>.

On the other hand, the Court cannot overlook that after issuing this inexact advisal, the trial

---

[3] Alone, an evidentiary ruling is not cognizable in federal habeas proceedings. <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991). Only where the ruling deprives a defendant of due process will an evidentiary ruling yield habeas relief. <u>Id</u>. at 68-70. Notably, Petitioner does not argue that the trial court's decision to allow the impeaching questions to be asked implicated his due process rights. Moreover, though arguing that the evidentiary ruling related to a "collateral matter," given that Petitioner claims Morfin was an "eyewitness," her bias was directly pertinent and was not collateral to the issues. Moreover, as noted by the 5th DCA, there was never any indication that witnesses would be allowed to be called to dispute Morfin if she denied that she attempted to intimidate a witness, and the trial court made clear that only "sanitized" questions would be permitted in order to prevent any prejudice attaching to Petitioner. Thus, the trial court's evidentiary determination does not give rise to federal habeas relief.

court also appointed Morfin an attorney and allowed significant time for her to be counseled.  Courts have found that having the opportunity to consult was an attorney "militates against a finding that [the witness'] later refusal to testify was the product of judicial coercion or other improper conduct by the district judge."  United States v. Smith, 997 F.2d 674, 683 (10th Cir. 1993); United States v. Santiago-Becerril, 130 F.3d 11, 23 (1st Cir.1997).  Therefore, the Court finds that the 5th DCA's analysis is sound and that habeas relief is not warranted.

**b.     The prosecutor's statements related to Morfin**

The Court agrees also with the 5th DCA when it determined that the prosecutor's statement that Morfin may be prosecuted depending upon the outcome of the trial was inappropriate.  However, review of the statement in the transcript seems to reveal that Morfin was not present when these statements were made; instead, they were made in open court with Morfin's appointed counsel present.[4]  Vavages, 151 F.3d at 1191 ("[A]dmonishments that are threatening or intimidating to a lay witness might not be threatening or intimidating to the witness' counsel.")

Even if Morfin was present and understood the statements, this does not necessitate habeas relief.  The conduct of prosecutors related to defense witnesses is governed by Webb.  United States v. Vavages, 151 F.3d 1185, 1189 (9th Cir. 1998).  However, as noted above, substantial interference is required before Petitioner's rights may be implicated.  Notably, here, the prosecutor did not badger Morfin or address her directly.  Moreover, as noted above, after the prosecutor made the statement at issue, Morfin consulted with her court-appointed lawyer, she had the opportunity to think about the situation overnight and to again consult with her attorney the next day (RT 5 at 604-605, 608).  Id. at 1191 ("[A] defendant may not be prejudiced by a prosecutor's improper [perjury] warnings where counsel for a witness strips the warnings of their coercive force.")  Thus, the Court finds that habeas relief is not warranted.

**c.     The was no prejudice as a result of Morfin not testifying**

Even if the prosecutor's statements were the cause of Morfin's decision not to testify or the

---

[4] Aside from the fact that the tenor and content of the statements indicate Morfin was not present, Morfin was a Spanish-speaker and the record demonstrates there was no interpreter available at the time the statements were made. (RT 4 at 475-476;  RT 4 at 477-479)

9

1    judge's statements were, as correctly noted by the Court of Appeal, there is no showing that Petitioner

2    was prejudiced thereby.  Petitioner made no proffer as to the anticipated content of Morfin's

3    testimony.  Though Petitioner argues that as the babysitter actually hired by the victim's mother,

4    Morfin's testimony was "critical" as an eyewitness, he provides no information as to what Morfin

5    would have said if called.  (Doc. 1 at 37)

6           Moreover, as the 5th DCA noted, it was admitted by the victim that Morfin *did not witness* any

7    act of molest so it is unclear exactly why Petitioner asserts that Morfin was an "eyewitness" as to any

8    relevant act.  Given that several other witnesses testified that the layout of the house was such that it

9    was rendered impossible to molest the child away from view, further testimony in this regard would

10   have been merely duplicative.  Likewise, Petitioner presented the testimony of the victim's former

11   babysitter who testified that the victim had a propensity for lying. Therefore, because Petitioner has

12   failed to detail how the failure to present Morfin's testimony—especially in light of the specter of bias

13   the marital relationship raised—caused him any prejudice. Valenzuela-Bernal, 458 U.S. at 874.

14   Therefore, Petitioner has failed to make out a constitutional violation on this basis[5] and the Court finds

15   that his petition on this ground must be **DENIED**.

16          **B.      Grounds Two and Three - Refusal to allow impeachment of Officer McRae with**

17   **evidence not disclosed by the prosecution**

18          Petitioner first contends that the trial court denied Petitioner his right to confront and cross

19   examine witnesses, to a fair trial and to present a defense as guaranteed by the Fifth, Six and

20   Fourteenth Amendments.  Toward this end, he argues the trial court precluded him from impeaching

21   officer McRae with evidence he had been convicted of a misdemeanor.  Second, Petitioner argues the

22   failure to disclose the information by the prosecution was a violation of Brady v. Maryland, 373 U.S.

23   83 (1963).  For the reasons set forth below, the Court finds the contentions are without merit.

24          **1.      The 5th DCA's Opinion**

25          The 5th DCA rejected Petitioner's claim as follows:

26

27   _____

     [5] Moreover, this is not the appropriate case for an evidentiary hearing to determine what Morfin would have said given that
28   the reason she did not testify was her right not to incriminate herself and the Court has no reason to believe her position has
     changed.

During trial defense counsel discovered that McRae had been convicted of a misdemeanor violation of section 632, subdivision (a), unauthorized recording of confidential communications. During an Evidence Code section 402 hearing, McRae testified the conviction occurred because he had placed his personal recorder in the family vehicle. The vehicle was jointly owned by McRae and his wife. He placed the recorder in the vehicle because he suspected his wife was having an affair and thought he could confirm his suspicions by recording her activities in the vehicle. McRae and his wife were cohabitating at the time. McRae did not realize his actions violated any statute because, although he was aware of the statute, he owned the vehicle in which the recorder had been placed. When a potential violation was discovered, he presented all the information to the district attorney's office and pled guilty to the charged offense.

The trial court excluded the prior conviction pursuant to Evidence Code section 352, as it found the evidence had little probative value, would confuse the jury, and would result in undue consumption of court time. (Evid.Code, § 352.)

Diaz argues that the refusal to allow him to impeach McRae with this misdemeanor conviction violated his Sixth Amendment right to confront the witnesses against him because the conviction involved moral turpitude.

A misdemeanor conviction is not admissible to impeach a witness, although the facts underlying the conviction may be admissible for impeachment purposes. (People v. Wheeler (1992) 4 Cal.4th 284, 296-297.) Admission of prior conduct to impeach a witness is subject to the trial court's discretion to exclude such evidence pursuant to Evidence Code section 352. (People v. Mendoza (2000) 78 Cal.App.4th 918, 925.) "'[I]mpeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, [under Evidence Code section 352,] courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value.' [Citation.] A court also may consider issues of 'fairness, efficiency, and moral turpitude' when evidence other than a felony conviction is proffered for impeachment. [Citation.]" (People v. Doolin (2009) 45 Cal.4th 390, 443.)

The trial court did not abuse its discretion in excluding the evidence and, even if we assume error occurred, Diaz did not suffer prejudice under any standard of review.

The trial court was required to determine whether McRae's conduct involved moral turpitude. In concluding the conduct did not, the trial court was presented with undisputed testimony that McRae had placed a recording device in his personal vehicle because he suspected his wife was having an affair. The recording confirmed McRae's suspicions.

These circumstances are extremely equivocal. Moreover, the trial court was permitted to consider judicial efficiency when excluding the evidence. As we explain below, considering the minimal probative value of the evidence, the trial court acted well within its discretion in excluding the evidence.

Diaz argues we must subject this error, if it occurred, to the heightened standard of review found in Chapman v. California (1967) 386 U.S. 18, 24, i.e., reversal is required unless the error was harmless beyond a reasonable doubt. While we do not agree with Diaz's contention, the exclusion of this evidence is not reversible, even under this standard. McRae was not a percipient witness to the events on which the charges were based. The relevant testimony he provided was limited to instances of consistent and inconsistent statements from the interviews of the victim and testimony about the minimal investigation conducted outside of interviewing the victim.

11

Both interviews of the victim were recorded, which the jury knew. Both attorneys had transcripts of the recordings, and Diaz spent most of his cross-examination of McRae establishing inconsistencies between the interviews and the victim's trial testimony. Impeaching McRae with his past conduct would not have assisted Diaz in this area.

The second area, the sheriff's minimal investigation, was an area explored by Diaz in cross-examination to support his defense. Once again, impeachment of McRae would not have benefitted the defense in any manner. In other words, the proposed evidence had virtually no probative value.

The other areas in which McRae provided testimony were (1) the victim's identification of Morfin's house as the house where she was abused, (2) testimony about the photographic lineup in which the victim identified Diaz as the person who molested her, (3) confirmation that Diaz was off work at the time of the alleged incidents, and (4) general questions relating to the interview process. None of these areas, many of them explored by Diaz's trial counsel, were areas where the credibility of the witness was in dispute, or even relevant. Accordingly, exclusion of the evidence that McRae had placed a recorder inside of his personal vehicle, if we assume it was erroneous, was harmless beyond a reasonable doubt.

People v. Diaz, 2010 WL 5095477  at *2-3.

## 2.    Federal Standard

As noted above, an evidentiary ruling is not cognizable in federal habeas proceedings. Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Only where the ruling deprives a defendant of due process will an evidentiary ruling yield habeas relief.  Id. at 68-70.  On the other hand, the failure to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment," is a violation of Due Process.  Brady v. Maryland, 373 U.S. 83, 87 (1963)

As noted by the 5th DCA, the trial court prohibited Petitioner from asking questions of Officer McRae about a misdemeanor conviction he suffered at some time in the past.  Notably, despite Petitioner's characterization of Officer McRae's testimony, his credibility was not determinative of any issues.  First, McRae's direct examination was quite short and limited.  It focused on the basics of the investigation and explaining why the investigation failed to do certain things, e.g., seizing the child's clothing and taking samples from the child's body.  Whether the jury members believed McRae's explanations could not impact the analysis as to whether petitioner committed the charged crimes. Instead, whether the jury convicted Petitioner rested nearly exclusively on whether they believed the child.

Second, the lengthy cross-examination of McRae was focused nearly entirely on the

12

inconsistent statements made by the child.  However, as noted by the 5th DCA, the interviews of the child were recorded and had been provided to counsel.  Thus, McRae's credibility in testifying in this regard was irrelevant.  If anything, the more believable McRae was in describing the child's inconsistent reports, the less believable the child was.  Thus, the Court does not find the 5th DCA's determination in this regard to give rise to habeas relief.

Finally, as noted by the 5th DCA, the Court here finds that the facts underlying McRae's conviction were so far attenuated to the issue of his believability that the probative value of this evidence was minute such that the risks of jury confusion and waste of time were far weightier.  Thus, the Court finds that the exclusion of this evidence does not give rise to habeas relief.

On the other hand, the Court also finds that due process is not offended by the prosecutor's failure to produce the information related to McRae's conviction.  As noted above, the Court agrees with the 5th DCA's determination that the evidence of McRae's conviction was not material.  (United States v. Bagley, 473 U.S. 667, 682 (1985), (Evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.")  Under no set of facts can the Court reasonably conclude that because the jury was unaware of the facts underlying McRae's conviction or the fact of his conviction, that the confidence in the verdict is in any way undermined.  Thus, the Court finds that the 5th DCA's determination was not unreasonable or contrary to established federal law.

**C.    Ground Four - Refusal to allow evidence of the victim's prior conduct**

Petitioner argues the trial court erred in refusing to allow his attorney to present evidence the victim was observed touching the genitals of another child and that the prosecutor noted in her closing argument that the child's sexualized knowledge came from the abuse inflicted by Petitioner.  Once again, the Court finds these arguments are without merit.

**1.    The 5th DCA's Opinion.**

The 5th DCA rejected Petitioner's claim as follows:

Diaz called Juarez as a defense witness. Juarez had taken care of the victim in the past while the victim's mother worked. Juarez testified that she did not like the way the victim played with other children. When Juarez confronted the victim about her behavior, the victim lied about what had occurred. When Juarez confronted the victim's mother about the behavior, the victim again denied the behavior. Juarez also found a

13

note in her son's pants that was written by the victim. When confronted, the victim denied writing the note. The victim also told her mother she did not write the note. Juarez observed the victim strike other children on several occasions. Finally, on several occasions the victim went into a bedroom and closed the door to be by herself.

The trial court precluded trial counsel from inquiring into an incident wherein the victim allegedly was touching another child's vaginal area. When confronted about the incident, the victim denied doing so. The trial court concluded that inquiry into this area would confuse the jury, primarily because neither party had presented an expert to explain the relevance of this type of behavior. Diaz argues that the excluded evidence was relevant to whether the victim had been exposed to the conduct she attributed to him at some point before he allegedly molested her.

We review the trial court's order excluding evidence for an abuse of discretion. (People v. Williams (1997) 16 Cal.4th 153, 196-197.) There was no abuse of discretion in this instance. As the trial court pointed out, the lack of expert testimony about the relevance of the victim's alleged behavior would have required the jury to speculate on what the behavior may, or may not, have indicated. Diaz argues that without this evidence, the jury could have inferred that the only way the victim, at her young age, could have learned about such behavior was because she had been molested by Diaz, when she may have been exposed to the behavior before he allegedly molested her. (See, e.g., People v. Daggett (1990) 225 Cal.App.3d 751, 757 (Daggett).)

Diaz, however, exaggerates the proffered evidence. According to trial counsel's offer of proof, Juarez would testify only that the victim had been touching the private parts of another child. We do not know the circumstances of the alleged incident, nor do we know the extent of the touching. Trial counsel also was not clear about whether the incident occurred before or after the charged conduct. The minimal information presented by trial counsel, which may very well have been the extent of any possible testimony on the incident, was very different than the allegations the victim made against Diaz. Based on what was before the trial court, only through speculation could one conclude that the touching incident somehow led to the charges against Diaz. Because the jury would have had to speculate to reach the conclusions asserted by Diaz, the evidence properly was excluded.

The dramatic difference between the allegations against Diaz and the proposed testimony distinguishes this case from Daggett. The defendant in Daggett was accused of committing acts of sodomy, oral copulation, and the touching of Daryl. Daryl, in turn, had been accused of molesting two younger children. Through discovery the defense learned that Daryl had accused two older children of molesting him when he was five years old. The defendant filed a motion to allow examination of Daryl about the molestation that occurred when he was five years old. The trial court denied the motion without holding a hearing to determine if the proposed testimony was relevant. (Evid.Code, § 782.)

The appellate court concluded the trial court erred and reversed the judgment. In so holding, the appellate court noted that a "child's testimony in a molestation case involving oral copulation and sodomy can be given an aura of veracity by his accurate description of the acts. This is because knowledge of such acts may be unexpected in a child who had not been subjected to them." (Daggett, supra, 225 Cal.App.3d at p. 757.) The appellate court concluded that evidence that Daryl previously had been molested in the same manner as he accused the defendant of molesting him was relevant because such testimony would cast doubt on the "conclusion that the child must have learned of these acts through the defendant. Thus, if the acts involved in the prior molestation are similar to the acts of which the defendant stands accused, evidence of the prior

molestation is relevant to the credibility of the complaining witness and should be admitted." (<u>Ibid.</u>)

Here, the evidence proffered by Diaz was not evidence that the victim had been molested in the past, but merely that she had been caught touching the vaginal area of another child. Moreover, the acts the victim accused Diaz of committing were not similar to the act she was accused of committing. Diaz was accused of rubbing the victim's chest, touching her vagina, and kissing her vaginal area. The act of touching the vagina of another child is sufficiently different from the acts Diaz was accused of committing to justify exclusion of the proffered evidence.

III. Prosecutorial Misconduct

During closing argument, the prosecutor argued that the only way the victim would know about the acts she alleged Diaz committed was if she were molested by Diaz. Diaz objected, arguing that because he was foreclosed from examining Juarez about the victim's actions with the other child, then the prosecutor should be precluded from making this argument. The trial court agreed and precluded additional argument on the issue, but refused to admonish the jury because it did not want to focus attention on the argument and it concluded the "minimal conduct" of the prosecutor did not taint the jury. Diaz argues the argument constituted prosecutorial misconduct and we must reverse the judgment.

"'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's ... intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'" [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves'" "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'" [Citation.]' [Citation.]" (<u>People v. Hill</u> (1998) 17 Cal.4th 800, 819.)

We reject Diaz's argument because, even if we assume error, the prosecutor's conduct was not egregious enough to infect the trial with unfairness, nor was it deceptive or reprehensible. The single instance of argument was made in good faith by the prosecutor. When the trial court sustained the objection, the prosecutor abandoned the line of argument. Under these circumstances it is impossible for Diaz to establish reversible error.

<u>People v. Diaz</u>, 2010 WL 5095477 at *3-5.

## 2.    Federal Standard

As Respondent correctly contends, Petitioner fails to state a federal claim based upon the trial court's refusal to admit the evidence of the victim's prior act.  By basing his claim on this evidentiary ruling, it arises completely under state law which is not cognizable on federal habeas. <u>Estelle</u>, 502 U.S. at 67 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' Only where the ruling deprives a defendant of due process will an evidentiary ruling yield habeas relief.  <u>Id</u>. at 68-70.

1        In any event, as the 5th DCA correctly noted, counsel's proffer failed to demonstrate that the

2 evidence could be used by the jury in determining its verdict.  First, there was no explicit

3 representation that the event occurred before the charged events.  The witness who observed the child

4 touching another child's genitals, Juarez, babysat the victim over two distinct periods during which the

5 incident occurred; one period occurred before Morfin babysat the child in Petitioner's home and one

6 period occurred after.  Clearly, if the act of touching happened after the events charged, it would have

7 no pertinence to Petitioner's defense at all.

8        Second, because Petitioner did not have an expert slated to testify as to the meaning of the

9 evidence, there was no way for the jury to understand how this incident could have any pertinence to

10 the charges.  Without an expert's testimony, the jury would not know if the touching described was a

11 part of normal child development or if it implied that the child had been the victim of sexual abuse.

12 Thus, the evidence would require gross speculation by the jury.

13        On the other hand, the 5th DCA properly noted the correct federal standard related to the

14 prosecutor's comment during closing argument. Prosecutorial misconduct will give rise to habeas

15 relief only when the misconduct did "so infect the trial with unfairness as to make the resulting

16 conviction a denial of due process." Greer v. Miller, 483 U.S. 756, 765 (1987) (quoting Donnelly v.

17 DeChristoforo, 416 U.S. 637, 643 (1974)); see also Darden v. Wainwright, 477 U.S. 168, 181(1986).

18 "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness

19 of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). A

20 prosecutor's challenged remarks are viewed in the context of the entire trial. See Greer, 483 U.S. at

21 765–66; see also Donnelly, 416 U.S. at 639–43.  "In determining whether a comment rendered a trial

22 constitutionally unfair, factors [the court] may consider are whether the comment misstated the

23 evidence, whether the judge admonished the jury to disregard the comment, whether the comment was

24 invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to

25 rebut the comment, the prominence of the comment in the context of the entire trial and the weight of

26 the evidence." Hein v. Sullivan, 601 F.3d 897, 912–13 (9th Cir.2010).

27        Here, the statements at issue, made in the prosecutor's closing argument, were limited and

28 brief.  The prosecutor noted,

. . . [S]he described to you conduct that only adults do, okay?  So you got to ask yourself, you know, this isn't something she learned in school, she is not – she is not – they are not talking to her about oral copulation or sexual penetration in school so you got to ask yourself, well where did she learn this?  She learned this through the defendant because this is what he did to her, okay?  She has knowledge that this is very odd, she is telling – she is telling us something about what adults so that somebody is taking her hand and putting it on her[sic] penis . . . His penis.

(RT5 at 834)  The court prevented the prosecutor from making further comments in this vein.  Id. at 864-865.  The trial court described the comments as "minimal conduct" and determined that admonishing the jury "would tend to unruly [sic] - - or focus them on something we agreed is not appropriate to consider in light of the testimony. The way the testimony came in.  If there had been expert testimony on those issues, it would be different."  Id.  Notably, when calling this issue to the Court's attention, the defense attorney did not request the jury be admonished nor did he seek any particular relief.  (RT5 at 864)

In addition, the trial court instructed the jury at the beginning of the trial and just before the closing arguments that the jury members could only consider the evidence presented and could not consider statements or questions by counsel.  (RT2 at 18; RT 5 at 806, 809-810)  Thus, the comment which encouraged the jurors to speculate as to how the child gained sexualized knowledge was directly addressed by the instructions given by the court.  Finally, the prosecution's case was based upon the child's statements while the Petitioner's defense wildly contested the child's account and her honesty. The brief comment by the prosecutor did not add any fuel to this fire.  Thus, the Court finds the determination of the 5th DCA was not unreasonable or contrary to established federal law.

In sum, Petitioner has failed to show that any of his claims for relief have merit.  Accordingly, the Court will deny the petition with prejudice.

## III.  Certificate of appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).   The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253(c)(1), which provides that "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process

issued by a State court;  . . .”

The Court may issue a certificate of appealability only when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that “reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were ‘adequate to deserve encouragement to proceed further’.”  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court’s determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

### ORDER

For the foregoing reasons, the Court **ORDERS**:

1.	The petition for writ of habeas corpus (Doc. 1), is **DENIED with prejudice**;

2.	The Clerk of the Court is **DIRECTED** to enter judgment and close the file;

3.	The Court **DECLINES** to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:  __**June 17, 2014**__                    ____**/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE

18